UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X   ECF case
FRANCIS ABANGA,

                    Plaintiff,

  v.                                 **COMPLAINT AND JURY DEMAND**

JP MORGAN CHASE & CO., JP MORGAN CHASE
BANK, N.A., & JP MORGAN SECURITIES, LLC.

                    Defendants.
-----------------------------------------------------------------X

The Plaintiff by his attorneys, Law Offices of Lauren Goldberg, PLLC, as and for his complaint against the Defendant alleges:

### NATURE OF THE CLAIMS

1. Plaintiff was employed as a financial advisor for Defendants and brings this action for discrimination and constructive discharge pursuant to 42 U.S.C. §1981. *et. seq.* ("Section 1981") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000 *et. seq*. ("Title VII"). Plaintiff also brings this action for unlawful discrimination against the Defendant pursuant to the New York State Human Rights Law (NYSHRL), in violation of New York Executive Law §§ 290 *et. seq.* and the New York City Human Rights Law (NYCHRL), in violation of the New York Administrative Code §§ 8-101 *et. seq.*

### JURISDICTION AND VENUE

2. The Court has jurisdiction over each of Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions regarding the deprivation of plaintiff's rights under 42 U.S.C. §1981 *et. seq.* and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000 *et. seq*. This Court has supplemental jurisdiction over plaintiff's related claims arising under state and local law pursuant to 28 U.S.C. § 1367(a).

3. Venue against all defendants except lies in this judicial district pursuant to 28 U.S.C. § 1391(b) as this action arose, in substantial part, within the Southern District of New York, where the unlawful practices alleged herein occurred.

4. Plaintiff received a Notice of Right to Sue from the Equal Employment Opportunity Commission which was dated April 26, 2018.

## PARTIES

5. Plaintiff is a black African American male who is domiciled in Bronx, New York.

6. Upon information and belief, Defendant JP Morgan Chase & Co. is a financial institution that has its principal location at 270 Park Avenue, New York 10017.

7. Upon information and belief, Defendant JP Morgan Chase Bank, N.A. is a wholly owned subsidiary of JP Morgan Chase and Co. and has its principle place of business located at 270 Park Avenue, New York, New York 10017.

8. Upon information and belief, Defendant JP Morgan Securities LLC is a subsidiary of JP Morgan Chase & Co. and an affiliate of JP Morgan Chase Bank, N.A, who has a principal office located at 277 Park Avenue, New York New York 10017.

9. Upon information and belief, defendants, collectively and individually, all had 50 or more full time employees.

## STATEMENT OF FACTS

10. Plaintiff began working for Defendants in 2007 as a personal banker.

11. In 2011, Plaintiff was promoted to the position of financial advisor because of his outstanding performance.

12. In 2013, Plaintiff left JP Morgan Chase briefly although he was quickly enticed to return by his supervisor at the time, Mr. Juan Flores.

13. Mr. Flores persuaded Plaintiff to return to JP Morgan Chase by offering him the opportunity to cover four branches as a financial advisor.

14. The four branches consisted of two branches in Castle Hill, New York and two branches in Parkchester, New York.

15. Shortly after Plaintiff returned to JP Morgan Chase, Mr. Flores transferred to a different location within JP Morgan Chase.

16. Plaintiff covered these four branches for approximately three years and had great performance results.

17. In March 2017, Plaintiff's supervisor, Gabriel Godoy, encouraged Plaintiff to take a position as a private client advisor in the Harlem branch of JP Morgan Chase.

18. Plaintiff did not want to relocate to Harlem because his business was growing, and his four branches were doing well.

19. Upon information and belief, the Harlem Branch did not manage as much money as the branches that the Plaintiff was covering.

20. Less than two months after refusing to move to the Harlem branch, Mr. Godoy told Plaintiff that he would no longer be covering his four branches, but that he would only be covering the two Parkchester branches.

21. Plaintiff asked whether he could retain the Castle Hill branches instead of the Parkchester branches if he could only have two of the four branches.

22. Mr. Godoy told him that was not an option.

23. Plaintiff was completely baffled as to why the two Castle Hill branches were being taken away from him as he had been doing very well at those branches.

24. Upon information and belief, when they took away the Castle Hill branches from Plaintiff, they gave those two branches to an Hispanic individual who was not as qualified as Plaintiff.

25. Upon information and belief, the Castle Hill branches are in an area that is heavily Hispanic, and upon information and belief, Defendant wanted a Hispanic individual to cover the Castle Hill branches.

26. In June 2017, Plaintiff was told that there was an opening as a private client advisor at the Fort Washington Branch on the Upper West Side.

27. Immediately, Plaintiff indicated that he was interested in moving to the Fort Washington Branch and asked his supervisor if he could apply.

28. Mr. Godoy told the Plaintiff that he could not apply because the demographics would not support him.

29. When Plaintiff asked Mr. Godoy to explain what he meant, Mr. Godoy stated that the Fort Washington branch was in a neighborhood that was largely Jewish and Hispanic.

30. He said that Plaintiff would not do well in such a neighborhood and that Plaintiff just had to accept it.

31. Upon information and belief, the Fort Washington position was later given to a Hispanic individual who was no more productive than Plaintiff.

32. In July 2017, another private client advisor position became available in the Throggs Neck area in the Bronx.

33. Knowing that this branch was also a profitable branch that managed a considerable amount of money, Plaintiff again asked if he could apply to that branch.

34. This time, Mr. Godoy told Plaintiff that he knew the Throggs Neck area and that it was not for Plaintiff because it was mostly Indian/Pakistani or white individuals.

35. Mr. Godoy stated that he thought Plaintiff would be best in Harlem.

36. It was obvious to the Plaintiff that Mr. Godoy wanted Plaintiff in Harlem because he was black and African American.

37. Knowing that his career would be severely limited with Defendants because his ethnicity/color/race would dictate where he could be placed, Plaintiff felt forced to leave.

38. Before leaving, however, Plaintiff talked with Mr. Godoy's supervisor, Mr. Jeff Papa who was the Regional Director of Banking and Wealth at JP Morgan Chase.

39. Plaintiff told Mr. Papa about Mr. Godoy's refusal to allow him to apply to certain branches based on his belief that Plaintiff would not be a good fit in those locations because of the demographics and his ethnicity.

40. Mr. Papa stated that he agreed with Mr. Godoy that Harlem would be the right "fit" for Plaintiff.

41. Plaintiff, knowing that he should not be limited in his career based on his ethnicity/race/color, Plaintiff had no choice but to leave JP Morgan Chase.

42. After leaving JP Morgan Chase, Plaintiff discovered, upon information and belief, that the open position in the Throggs Neck branch was later filled by an Indian individual who had lesser qualifications than Plaintiff.

43. Defendant's practice of refusing to allow certain branches to Plaintiff because of his ethnicity/race/color is discriminatory and unlawful.

44. Defendant's actions were intentional and with reckless disregard of Plaintiff's rights.

45. Defendant's practices denied Plaintiff the same rights and privileges of those with other ethnicities/races/colors.

46. As a result of Defendant's actions, Plaintiff has suffered and continues to suffer emotional distress and mental anguish.

47. As a result of Defendant's actions, Plaintiff's career has suffered and continues to suffer and he has lost wages, benefits, and commissions.

48. Defendants subjected Plaintiff to disparate treatment and discrimination in the terms and conditions of his employment based on his race/color/ethnicity.

49. Defendants failed to promote Plaintiff because of his race/ethnicity/color.

50. Plaintiff was subjected to disparate treatment which included similarly situated financial advisors outside of Plaintiff's protected group being placed as private client advisors in branches where Plaintiff was not permitted.

51. This was significant because Plaintiff's commissions were based on the amount of money that was being managed at the specific branch where he worked.

52. The greater the amount of funds that the bank handled meant the greater possibility of commissions that the Plaintiff would receive.

53. Plaintiff was denied the opportunity to work in the more affluent branches because of his race/ethnicity/color.

54. Plaintiff was also subjected to a hostile work environment based on the comments and actions from his supervisors as detailed herein.

55. Plaintiff was forced to resign from his position based on the discriminatory actions of Defendants.

## AS AND FOR A FIRST CAUSE OF ACTION

### (Discrimination in Violation of Section 1981)

56. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

57. Defendants' discriminatory actions toward the Plaintiff based on his race/color/ethnicity deprived Plaintiff of his rights to make and enforce contracts and denied Plaintiff the enjoyment of all the benefits privileges, terms and conditions of a contractual relationship of employment as is enjoyed by others outside his race/ethnicity/color.

58. Based on the actions described above, Defendants created a hostile work environment for Plaintiff based on his race and/or ethnicity and/or color; subjected Plaintiff to disparate treatment based on his race and/or ethnicity and/or color; and constructively discharged Plaintiff by making conditions so intolerable that Plaintiff felt that he had no choice but to end his employment with Defendants.

59. Defendants willfully engaged in unlawful employment practices by discriminating against Plaintiff because of his race and/or color and/or ethnicity, with respect to the terms, conditions and privileges of employment.

60. Defendants actions were intentional and were willful with reckless indifference to Plaintiff's rights.

61. As a result of Defendants' actions, Plaintiff was deprived of equal employment opportunities, suffered discrimination, and sustained emotional distress, financial loss and career harm.

## AS AND FOR A SECOND CAUSE OF ACTION

### (Discrimination in Violation of Title VII)

62. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

63. Based on the actions described above, Defendants created a hostile work environment for Plaintiff based on his race and/or ethnicity and/or color; subjected Plaintiff to disparate treatment based on his race and/or ethnicity and/or color; and constructively discharged Plaintiff by making conditions so intolerable that Plaintiff felt that he had no choice but to end his employment with Defendants.

64. Defendants' treatment of Plaintiff was discriminatory and in violation of Title VII.

65. Defendants discriminated against Mr. Abanga in the terms and conditions of his employment with Defendants.

66. In doing so, Defendants acted maliciously and with reckless indifference to Mr. Abanga's rights to be free from discrimination based on his race and/or ethnicity and/or color.

67. Defendants are liable as plaintiff's "employer" pursuant to Title VII.

68. As a result of Defendants' actions, Plaintiff was deprived of equal employment opportunities, suffered discrimination, and sustained emotional distress, financial loss and career harm.

## AS AND FOR A THIRD CAUSE OF ACTION

### (Discrimination in Violation of the NYSHRL)

69. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

70. Based on the actions described above, Defendants created a hostile work environment for Plaintiff based on his race and/or ethnicity and/or color; subjected Plaintiff to disparate treatment based on his race and/or ethnicity and/or color; and constructively discharged Plaintiff by making conditions so intolerable that Plaintiff felt that he had no choice but to end his employment with Defendants.

71. Defendants' treatment of Plaintiff was discriminatory and in violation of the NYSHRL.

72. Defendants discriminated against Mr. Abanga in the terms and conditions of his employment with Defendants.

73. In doing so, Defendants acted maliciously and with reckless indifference to Mr. Abanga's rights to be free from discrimination based on his race and/or ethnicity and/or color.

74. Defendants are liable as plaintiff's "employer" pursuant to the New York State Human Rights Law.

75. As a result of Defendants' actions, Plaintiff was deprived of equal employment opportunities, suffered discrimination, and sustained emotional distress, financial loss and career harm.

## AS AND FOR A FOURTH CAUSE OF ACTION

**(Discrimination in Violation of the NYCHRL)**

76. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

77. Based on the actions described above, Defendants created a hostile work environment for Plaintiff based on his race and/or ethnicity and/or color; subjected Plaintiff to disparate treatment based on his race and/or ethnicity and/or color; and constructively discharged Plaintiff by making conditions so intolerable that Plaintiff felt that he had no choice but to end his employment with Defendants.

78. Defendants' actions were violation of §8-107(1)(a) of the New York City Administrative Code.

79. Defendants acted maliciously and with reckless indifference to Mr. Abanga's rights to be free from discrimination based on his race and/or ethnicity and/or color.

80. Defendants are liable as plaintiff's "employer" pursuant to the City Human Rights Law.

81. As a result of Defendants' actions, Plaintiff was deprived of equal employment opportunities, suffered discrimination, and sustained emotional distress, financial loss and career harm.

## AS AND FOR A FIFTH CAUSE OF ACTION
## (NYCHRL Employer Liability)

82. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

83. New York City Administrative Code § 8-107(13) Employer liability for discriminatory conduct by employee, agent or independent contractor reads:

    a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

    b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

1. The employee or agent exercised managerial or supervisory responsibility; or

2. The employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

3. The employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

84. Defendants violated the section cited herein as set forth above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment in his favor and against defendants, awarding the following relief:

(a) An award of damages in an amount to be determined at trial to compensate plaintiff for all monetary and/or economic damages, including but not limited to, the loss of past and future income, wages, compensation, and benefits;

(b) An award of damages in an amount to be determined at trial to compensate plaintiff for

all non-monetary and/or compensatory damages, including but not limited to compensation for severe mental anguish, anxiety, stress, humiliation, embarrassment, and emotional distress;

(c) An award of any and all other monetary and/or non-monetary losses suffered by plaintiff in an amount to be determined at trial;

(d) An award of punitive damages;

(e) An award of all costs that plaintiff has incurred in this action and reasonable attorneys' fees; and

(f) Such other relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated:    New York, New York
          May 7, 2018

**LAW OFFICES OF LAUREN GOLDBERG, PLLC**

By: _____

LAUREN GOLDBERG (LG: 9890)
Attorney for Plaintiff
65 Broadway, 7th Floor
New York, N.Y. 10006
(646) 452-8380